IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JOY L. LAWRENCE,                                    Case No. 6:12-cv-01318-PK

        Plaintiff,                                **FINDINGS AND**
                                                    **RECOMMENDATION**

    v.

**CAROLYN W. COLVIN,**
Commissioner of Social Security,

        Defendant.

PAPAK, Magistrate Judge:

      Joy Lawrence ("plaintiff") seeks judicial review of a final decision of the Commissioner of

Social Security ("Commissioner") denying her applications for Title II disability insurance benefits

("DIB") and Title XVI supplemental security income ("SSI") under the Social Security Act ("Act").

For the reasons set forth below, the Commissioner's decision should be affirmed and this case should

Page 1 - FINDINGS AND RECOMMENDATION

be dismissed.

## PROCEDURAL BACKGROUND

On October 10, 2007, plaintiff protectively applied for DIB and SSI. Tr. 19, 159-67. After her applications were denied initially and upon reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"). Tr. 19, 90-98, 101-29, 132-57. On August 18, 2010, a hearing was held, at which plaintiff testified and was represented by counsel; a vocational expert ("VE") also testified. Tr. 45-85. On August 27, 2010, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 19-29. After the Appeals Council denied review, plaintiff filed a complaint in this Court.[1] Tr. 1-4.

## FACTUAL BACKGROUND

Born on August 19, 1974, plaintiff was 32 years old on the alleged onset date of disability and 35 years old at the time of the hearing. Tr. 53, 159, 166. Plaintiff completed the ninth grade and was formerly certified as a pharmacy technician. Tr. 54, 206, 441. She worked previously as a caregiver, fast-food worker, and pharmacy technician. Tr. 54, 76, 198. Plaintiff alleges disability beginning July 24, 2007, due to a "left knee injury [and] fibromyalgia," which results in "constant pain and fatigue." Tr. 197; *see also* Pl.'s Opening Br. 2 ("[p]laintiff alleges disability based on a combination of impairments, including fibromyalgia, severe migraines, Chiara Malformation, major depressive disorder, PTSD, anxiety, back and knee pain, insomnia and obesity").

## STANDARD OF REVIEW

---

[1] The record before the Court constitutes over 700 pages, but with some incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears. In addition, because plaintiff did not numeralize her memorandum, the Court refers to the page numbers assigned in the docket.

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence of record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either

singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national and local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S FINDINGS

At step one of the sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 24, 2007, the alleged onset date. Tr. 21. At step two, the ALJ determined that plaintiff had the following severe impairments: fibromyalgia, migraines, and obesity. *Id.* At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 24.

Because she did not establish disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to: "lift and carry 10 pounds"; stand or walk for two hours, and sit for six hours, in an eight-hour workday; "frequently balance, stoop, kneel, crouch and crawl"; "occasionally climb stairs and ramps"; and perform "unskilled work (routine, repetitive tasks

involving simple, straightforward instructions)." *Id.* Additionally, the ALJ found that plaintiff "requires [a] brief change in position, no more than 5 minutes every hour." *Id.*

At step four, the ALJ determined that plaintiff could not perform her past relevant work. Tr. 27. At step five, the ALJ found, based on the VE's testimony, that plaintiff could perform a significant number of jobs existing in the national and local economy despite her impairments, such as document sorter, addresser, and final assembler. Tr. 28-29. Accordingly, the ALJ concluded that plaintiff was not disabled under the Act. Tr. 29.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) discrediting her testimony; (2) rejecting the lay statements; (3) improperly weighing the opinions of Anna Macasa, M.D., Curtis Delplanche, M.D., and "a discharging provider"; and (4) finding that she was not disabled at step five because the RFC was incomplete and the VE's testimony was invalid. Pl.'s Opening Br. 6-12.

I.    Plaintiff's Credibility

Plaintiff asserts that the ALJ failed to articulate a clear and convincing reason, supported by substantial evidence, for rejecting her subjective symptom statements concerning the extent and severity of her impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of symptoms, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.

1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified that she is primarily disabled by her headaches and depression. Tr. 56-57, 61. In response to specific questions from her attorney, plaintiff also endorsed daily pain from her fibromyalgia and "horrible" knees. Tr. 63, 66, 68. Due to the severity of this pain, plaintiff explained that she can only sit for one hour or stand for 30 to 45 minutes at a time; she estimated that she reclines for "[p]robably five or six hours out of the day." Tr. 69-70. Plaintiff also stated she could walk for one or two blocks before needing to rest and is unable to kneel, squat, climb stairs or ladders, or otherwise bend at the knees. Tr. 70-71. When asked to describe a typical day, plaintiff remarked that she wakes up around 9 a.m. and then watches television for "[a] couple hours," at which point she either "take[s] a shower [and] get[s] ready for the day" or "just stay[s] in [her] room"; afterwards, plaintiff "might have a doctor's appointment or . . . go to the grocery store," take a nap, and/or make dinner. Tr. 72-73.

After summarizing plaintiff's hearing testimony, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but that her statements regarding the extent of these symptoms were not fully credible due to her inconsistent statements, the lack of objective medical evidence, and her drug-seeking behavior.[2] Tr.

---

[2] Plaintiff does not challenge the ALJ's reliance on her inconsistent statements or drug-seeking behavior. *See* Pl.'s Opening Br. 8-10. The Commissioner expressly raised this shortcoming in its opposition, but plaintiff elected not to file a reply brief. Def.'s Resp. Br. 8.

Page 6 - FINDINGS AND RECOMMENDATION

24-27.

Notably, the ALJ determined that plaintiff lack credibility because she "appears to overstate her symptoms" and there was "no objective evidence to support her alleged level of pain." Tr. 25-26. A tendency to exaggerate is a legitimate consideration in evaluating a claimant's credibility. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *see also Burch*, 400 F.3d at 680 (inconsistent statements or actions can serve as a basis for discrediting a claimant's testimony). Further, "lack of medical evidence . . . is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 680-81. Substantial evidence supports the ALJ's conclusion in this case. For instance, plaintiff told a treating provider that she had "horrible" pain in her back and requested narcotics; upon examination, however, plaintiff exhibited a full range of motion, a negative straight leg raise, and lower extremity sensation within normal limits. Tr. 26, 592. In addition, as the ALJ observed, imaging studies of plaintiff's back and hips yielded normal results, as did examinations performed by other treating and examining doctors. *See, e.g.*, Tr. 26, 293-94, 320, 322-23, 577-80, 584. Given this evidence, the ALJ reasonably concluded that inconsistencies between plaintiff's subjective symptom statements and the minimal objective findings belied her credibility. Even if this evidence could be interpreted more favorably to plaintiff, because the ALJ's reading is rational, it must be upheld. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198

---

For this reason alone, the ALJ's credibility finding should be affirmed. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-63 (9th Cir. 2008). Furthermore, to the extent plaintiff asserts "[t]he ALJ improperly failed to evaluate each of the symptoms alleged" in accordance with 20 C.F.R. § 404.1529(c) and 20 C.F.R. § 416.929(c), her argument is unpersuasive. Pl.'s Opening Br. 9. Plaintiff has not cited to, and the Court is not aware of, any authority requiring an ALJ to individually and explicitly evaluate each and every factor set forth in these regulations to properly find a claimant not credible. Nevertheless, the Court finds that the ALJ adequately complied with the relevant statutes and regulations in assessing plaintiff's DIB and SSI claims.

(9th Cir. 2004).

The ALJ found that plaintiff's "credibility is further undermined by her drug-seeking behavior." Tr. 26. Evidence of drug-seeking behavior can serve as a clear and convincing basis to discredit a claimant's testimony. *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001). Here, a July 2010 treatment note from Thurman McKenzie, M.D., reflects that plaintiff "would like narcotics . . . and feels frustrated that she cannot get [them] because 2 specialists have deemed her 'not a good candidate' for opiate therapy." Tr. 26, 592; *see also* Tr. 383 (Marion Reynolds, M.D., reporting, in September 2008, that plaintiff "really wanted narcotics [but] I am unwilling to give her narcotics for fibromyalgia and I do not think that Percocet every 4 hours is a good plan"). Plaintiff then sought "further workup" from Dr. McKenzie because "[s]he feels her back pain is different from her fibromyalgia and feels that if there is something 'wrong' with her back she will be able to get narcotics." Tr. 593.

Plaintiff left another medical provider when narcotics were refused. Tr. 605. She also sought narcotics from Dr. McKenzie in April 2010, despite having received 110 Vicodin from another provider within the previous ten days. Tr. 26, 605; *see also* Tr. 461 (plaintiff seeking narcotics from a medical provider and reporting that "she never abused or misused meds [but notes] that it is easy to buy meds from [the] street"). Jeremy Swindle, M.D., informed plaintiff in June 2009 that he would not prescribe narcotics "without drug testing due to [her] history of vi[o]lating narcotic contracts with previous physicians." Tr. 468. David Silvestre, M.D., reported that plaintiff did not express interest in any medication for her fibromyalgia other than opiates. Tr. 26, 480. Likewise, Dr. Macasa and a pain clinic separately indicated that plaintiff was not interested in a multi-disciplinary approach to pain management and only wanted narcotics. Tr. 26, 465, 584. As

Page 8 - FINDINGS AND RECOMMENDATION

the ALJ noted, plaintiff's doctor-shopping and drug-seeking behavior is "further evidence of symptom overstatement." Tr. 26; *see also Catt v. Colvin*, 2014 WL 98720, *5-6 (D.Or. Jan. 8, 2014) (affirming the ALJ's credibility finding under analogous circumstances).

Thus, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements. The ALJ's credibility finding should be affirmed.

II.    Lay Testimony

Plaintiff next argues that the ALJ neglected to furnish a germane reason for rejecting the testimony of her teenage niece, Amanda Rhea Benjamin.[3] Lay testimony regarding a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation omitted). In order to discredit such testimony, the ALJ must provide "reasons germane to each witness." *Id.* (citation and internal quotation omitted). Nonetheless, the ALJ need not "discuss every witness's testimony on a individualized, witness-by-witness basis . . . if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id.* (citations omitted).

In November 2007, Ms. Benjamin completed a Third-Party Adult Function Report. Tr. 234-

---

[3] Although plaintiff asserts broadly that the ALJ "improperly rejected lay witness testimony," she neglected to identify the name of the lay witness or the testimony that was allegedly wrongfully rejected and, further, mischaracterized the ALJ's discussion of that evidence. Pl's Opening Br. 10-11; *see also Independent Towers of Wash. v. Washington*, 350 F.3d 925, 929-30 (9th Cir. 2003) (party failed to preserve certain issues on appeal by "provid[ing] little, if any, analysis to assist the court in evaluating the legal challenge"). In any event, the only third-party statement in the record before the Court is from Ms. Benjamin. Tr. 234-41; *but see* Tr. 39 (plaintiff's counsel referring to lay statements from "plaintiff's good friend of 23 years and her husband").

41. Ms. Benjamin's Third-Party Adult Function Report was completed four days after plaintiff's Adult Function Report and is virtually identical thereto. *Compare id.*, *with* Tr. 222-29. In that report, Ms. Benjamin stated that plaintiff engaged in limited cooking, cleaning, and shopping due to her pain, and could no longer walk long distances or bend at the knees. Tr. 235-39. Ms. Benjamin nonetheless reported that plaintiff was independent in her self-care and retained the ability to manage her finances, play cards, use the computer, lift ten pounds "but not often," follow written and spoken instructions, and get along with authority figures. Tr. 237-40.

After reciting the relevant evidence as it related to plaintiff's functional impairments, the ALJ "considered [Ms. Benjamin's] statements" and found "that they support that [plaintiff] has some limitations." Tr. 27. As such, the ALJ did not wholly reject the third-party testimony. The ALJ nonetheless afforded less weight to Ms. Benjamin's statements because they "generally reflect the same allegations made by [plaintiff] that she is completely disabled from all work, allegations that are not entirely credible for the reasons discussed above." *Id.* In sum, to the extent the ALJ disregarded Ms. Benjamin's testimony, he did so for the same reasons that he discredited plaintiff's subjective symptom statements.

As addressed in section I, the ALJ provided clear and convincing reasons, supported by substantial evidence, to reject plaintiff's credibility, and these reasons are equally applicable to Ms. Benjamin's testimony. Critically, plaintiff's gain-seeking behavior and the lack of objective medical findings erode the credibility of both her and her niece's statements. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (rejecting lay testimony on same basis as claimant's discredited subjective reports); *see also Molina*, 674 F.3d at 1114-22 ("an ALJ's failure to comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to in

discrediting the claimant's claims also discredits the lay witness's claims") (citation and internal

quotations omitted). Accordingly, because the ALJ provided a germane reason to discredit the lay

testimony, the ALJ's decision should be upheld as to this issue.

III.    Medical Opinion Evidence

Plaintiff also contends that the ALJ failed to provide legally sufficient reasons, supported by

substantial evidence, for discrediting the opinions of Dr. Macasa , Dr. Delplanche, and an unnamed

treatment provider. There are three types of medical opinions in social security cases: those from

treating, examining, and non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

In considering medical evidence, "a treating physician's opinion carries more weight than an

examining physician's, and an examining physician's opinion carries more weight than a reviewing

physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). More weight is afforded

to "opinions that are explained than to those that are not, . . . and to the opinions of specialists

concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear

and convincing reasons for doing so. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)

(citing *Lester*, 81 F.3d at 830-31). If a treating or examining doctor's opinion is contradicted by

another doctor's opinion, it may be rejected by specific and legitimate reasons. *Id.*

A.    Drs. Macasa and Delplanche

In June 2009, plaintiff initiated care with neurologist Dr. Delplanche for headache treatment.

Tr. 510-17. Plaintiff saw Dr. Delplanche every three to four months for approximately one year.

Tr. 434, 520. Dr. Delplanche's chart notes reflect plaintiff's subjective complaints, occasional

examinations, and the doctor's recommendations, including that plaintiff lose weight and cease

taking certain prescription and over-the-counter medications, which he though were excessive and contributing to the incidence of her headaches. *See, e.g.*, Tr. 422-39, 510-17. While Dr. Delplanche diagnosed plaintiff with a number of conditions, he never articulated a basis for several of those diagnoses or offered an opinion about plaintiff's limitations or functional restrictions. *Id.*

In June 2010, Dr. Macasa, a rheumatologist, performed a one-time evaluation of plaintiff to determine whether she suffered from fibromyalgia. Tr. 583-85. Dr. Macasa's report documents plaintiff's subjective complaints and a physical examination, as well as the doctor's instruction that plaintiff engage in "regular exercise and a healthy lifestyle" to treat her fibromyalgia, as opposed to narcotics. *Id.* Like Dr. Delplanche, Dr. Macasa's report is silent as to plaintiff's functional limitations. *Id.* As such, there is no evidence from either Drs. Delplanche or Macasa directed to plaintiff's alleged disability or capacity for work.

The ALJ accepted diagnoses from both providers to resolve, at step two, that plaintiff's fibromyalgia and migraines were medically-determinable and severe. Tr. 21-22. Additionally, the ALJ discussed evidence from Drs. Delplanche and Macasa in formulating plaintiff's RFC but did not afford any particular weight thereto. Tr. 25-26. However, because the reports of Dr. Delplanche and Dr. Macasa do not outline any functional limitations, they are not probative as to what kind of work plaintiff could perform despite her impairments, such that "the ALJ was not required to formally assess, or even discuss, them." *Corso v. Colvin*, 2014 WL 950029, *10 (D.Or. Mar. 11, 2014) (citing *Meanel v. Apfel*, 172 F.3d 1111, 1114-15 (9th Cir. 1999); *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999)).

In any event, because the ALJ did not reject the opinions of Drs. Macasa and Delplanche,

Page 12 - FINDINGS AND RECOMMENDATION

plaintiff failed to identify any error, let alone a harmful one. *See McLeod v. Astrue*, 640 F.3d 881, 887-88 (9th Cir. 2011) (as amended) (party seeking reversal bears the burden of establishing harmful error). The ALJ's decision should be affirmed in this regard.

    B.    <u>Unnamed Source</u>

In July 2010, plaintiff underwent surgery for her Chiara Malformation. Tr. 61-62, 456. The discharge report for that surgery, signed illegibly by a "Staff/Physician/LIP," listed the following guidance regarding activities: plaintiff can shower, take a sponge-bath, and lift no more than five pounds, but may not drive or take a bath in a tub. Tr. 456. Plaintiff was also instructed to "keep [her] incision clean and dry," "avoid strenuous activity," and "walk daily." *Id.* The ALJ assigned "little weight" to the discharge note's five pound weight limit: "[p]resumably, this post-surgical restriction is only temporary" and "[t]he treatment provider who signed that form (name illegible) did not provide a narrative statement to explain that restriction." Tr. 27.

The Court finds the ALJ reasonably determined that plaintiff's post-surgical limitations were intended to be temporary, such that they did not need to be incorporated into the RFC. Discharge instructions are typically for a fixed duration; by definition, they relate only to the immediate post-procedural period. By way of example, plaintiff's discharge note counsels her to "keep [her] incision clean and dry." Tr. 456. Yet this instruction becomes immaterial as soon as that incision heals. Indeed, plaintiff's hearing testimony recognized the transitory nature of her post-surgery restrictions: "because of my surgery I'm at a five pound weight limit [b]ut on a normal given day . . . I pick [my 12 pound great nephew] up once in a while but that's about what I can do without it really hurting." Tr. 70; *see also* Tr. 227 (plaintiff specifying on her Adult Function Report that she "can only lift 10 pounds and not consistently"); Tr. 239 (Ms. Benjamin remarking that plaintiff "can only lift 10 lbs.

but not often"). In other words, consistent with the ALJ's RFC, plaintiff's own testimony reveals that she can lift and carry ten pounds. Thus, the ALJ's assessment of the reports of Dr. Macasa, Dr. Delplanche, and the unnamed source should be upheld.[4]

IV.    Step Five Finding

Lastly, plaintiff asserts that the ALJ erred at step five by formulating an RFC that failed to account for all of her limitations and relying on invalid VE testimony. Specifically, concerning the latter, plaintiff asserts that the VE neglected to identify a significant number of jobs in the local economy.

A.    RFC Assessment

The RFC is the maximum a claimant can do despite her limitations. *See* 20 C.F.R §§ 404.1545, 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, *available at* 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

---

[4] In the alternative, plaintiff argues that the ALJ should have developed the record further in regard to the opinions of Dr. Macasa, Dr. Delplanche, and the other source. The claimant bears the burden of proving the existence or extent of an impairment, such that the ALJ's limited "duty to further develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). Neither the ALJ nor any medical source found the record in this case to be ambiguous or insufficient for proper evaluation. Plaintiff simply failed to introduce any medical evidence regarding her functional impairments. Plaintiff's failure to carry her burden of proof, however, does not equate to an inadequacy or ambiguity in the record. Under these circumstances, the ALJ's duty to more fully develop the record was not triggered.

As discussed above, the ALJ properly evaluated plaintiff's subjective symptom statements, the lay testimony, and the opinions of Dr. Macasa, Dr. Delplanche, and the unnamed source. Plaintiff's contention, which is contingent upon a finding of harmful error in regard to the aforementioned issues, is therefore without merit. *Bayliss*, 427 F.3d at 1217-18; *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Moreover, to the extent plaintiff argues the ALJ erred by "fail[ing] to include a narrative discussion describing how the evidence supports each conclusion and describe the maximum amount of each work-related activity the individual can perform or any explanation how material inconsistencies or ambiguities in the evidence were considered or resolved," in accordance with SSR 96-8p, her argument is unavailing. Pl.'s Opening Br. 9-10 (internal quotations and ellipses omitted). The ALJ's RFC formulation - which included an analysis of plaintiff's credibility, the lay testimony, and the relevant and probative evidence of record - clearly satisfies the requirements of SSR 96-8p. *See* Tr. 21-27. Further, as the Commissioner observes, this "regulation does not require an ALJ to discuss a claimant's limitations with respect to each of the fifty-four work functions." Def.'s Resp. Br. 8 n.1 (citations omitted). In sum, the ALJ's RFC for a limited range of sedentary work accounts for all of the well-supported limitations in the record.

B.     Adequacy of the VE's Testimony

The Commissioner can meet its step five burden by either applying the Medical Vocational Guidelines or taking the testimony of a VE. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010), *cert. denied*, 131 S.Ct. 2882 (2011) (citation and internal quotations omitted). "Where, as here, the ALJ relies on the testimony of a VE in making his step five finding, the issue is whether a significant number of jobs, as opposed to discrete occupations, have been identified."

Page 15 - FINDINGS AND RECOMMENDATION

*Cruise v. Astrue*, 2012 WL 5037257, *10 (D.Or. Sept. 28), *adopted by* 2012 WL 4966462 (D.Or.

Oct. 17, 2012) (citing 20 C.F.R. §§ 416.960(c), 416.966; SSR 83-14, *available at* 1983 WL 31254).

There is no "bright-line rule for what constitutes a 'significant number' of jobs." *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012). Nonetheless, if "either [the incidence of regional or national jobs]

is 'significant,' then [the court] must uphold the ALJ's decision." *Id.* (citing 42 U.S.C. §

423(d)(2)(A)).

     The Ninth Circuit has found an insufficient number of jobs in only two cases. *Id.* at 393.

First, in *Walker v. Mathews*, 546 F.2d 814, 820 (9th Cir. 1976), the VE's identification of a "few

scattered jobs" was inadequate to meet the ALJ's step five burden. More recently, in *Beltran*, the

court found that neither 1,680 national positions nor 135 regional positions were significant,

especially because "the district court's finding . . . was solely based on a vocational expert's

testimony [but] [u]pon questioning by [the claimant's] attorney, the same vocational expert admitted

that there are not many of these jobs anymore" and none in the specific region in which the claimant

resided. *Beltran*, 700 F.3d at 389-91.

     In this case, the VE identified three representative vocations in response the ALJ's dispositive

hypothetical question: document sorter, DOT § 249.587-018, with 95,490 positions nationally and

595 in Oregon; addresser, DOT § 209.587-010, with 25,124 positions nationally and 169 in Oregon;

and final assembler, DOT § 713.687-018, with 28,040 positions nationally and 220 in Oregon. Tr.

80-83. Collectively, the VE described 148,654 jobs in the national economy and 984 jobs in the

regional economy that plaintiff could perform despite her impairments.

     The Court cannot conclude that either the number of national or regional positions identified

by the VE qualify as insignificant. The total number of national positions here - i.e. 148,654 - is

Page 16 - FINDINGS AND RECOMMENDATION

almost ten times larger than those at issue in *Beltran. Beltran*, 700 F.3d at 389-91 (1,680 nationwide jobs insignificant); *see also Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (64,000 nationwide jobs significant); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014) (25,000 nationwide jobs significant).  Furthermore, the incidence of positions in Oregon is just shy of the generally accepted number: "[b]etween 1,000 and 1,500 jobs in the regional economy constitutes a significant number for the purposes of the SSA." *Cruise*, 2012 WL 5037257 at *10 (citing *Meanel*, 172 F.3d at 1115; *Barker v. Sec'y of Health & Human Servs.*, 882 F.2d 1474, 1479 (9th Cir. 1989)); *see also Davis v. Colvin*, 2014 WL 358407, *10 (C.D.Cal. Jan. 30, 2014) (490 regional jobs significant); *Yelovich v. Colvin*, 532 Fed.App'x 700, 702 (9th Cir. 2013) (900 regional jobs significant).  The ALJ's step five finding should be affirmed.

## RECOMMENDATION

For the foregoing reasons, the Commissioner's decision should be AFFIRMED and this case DISMISSED.  A final judgment should be entered.

**SCHEDULING ORDER**

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due no later than fourteen days after the date this Findings and Recommendation is filed.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.  If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 19th day of May, 2014.

Paul Papak
United States Magistrate Judge